UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| QUINTIN PHILLIPPE JONES,<br>      Petitioner<br><br>vs.<br><br>DOUGLAS DRETKE, Director,<br>Texas Department of Criminal<br>Justice, Correctional Institutions<br>Division,<br>      Respondent. | §<br>§<br>§<br>§<br>§  Civil Action No. 4-05-CV-0638-Y<br>§  (DEATH PENALTY CASE)<br>§<br>§<br>§<br>§ |

**RESPONSE FROM PETITIONER'S COUNSEL
TO *PRO SE* MOTION FOR APPOINTMENT OF COUNSEL**

COMES NOW, JACK V. STRICKLAND, court-appointed counsel for petitioner, QUINTIN PHILLIPPE JONES, and files this, his response from petitioner's counsel to *pro se* motion for appointment of counsel. Strickland would show the court as follows:

1. On December 27, 2005, QUINTIN PHILLIPPE JONES, filed his second *pro se* motion for appointment of counsel [doc. #9]. On February 1, 2006, the Court signed and entered an order requiring Strickland to respond within thirty days from that date. [doc. #12]. Accordingly, this response is timely if filed not later than March 2, 2006.

2. At the outset and before responding to the complaints raised by petitioner in his motion, Strickland notes that he does so only to the extent that he reasonably believes it necessary to do so in order to comply with the Court's order. R. 1.05, *Texas Disciplinary Rules of Professional Conduct* (TDRPC). Absent a need to do so, Strickland has not and will not reveal either privileged or unprivileged confidential information regarding petitioner.

3. In summary, petitioner raises the following complaints concerning Strickland's efforts

in regards to petitioner's application for state writ of habeas corpus pursuant to Art. 11.071, *Texas Code of Criminal Procedure*:

      a.    that Strickland failed to investigate potential mitigating evidence;

      b.    that Strickland failed to request funds for intelligence testing of petitioner;

      c.    that Strickland failed to raise any mitigation claims in petitioner's state habeas application; and

      d.    that Strickland was found in contempt for failing to file a timely state habeas application.

Each of these complaints will be addressed in the order indicated above.

4.    <u>Complaint Number One</u> (petition, page 3)

The first complaint raised by petitioner is that Strickland failed to investigate potential mitigating evidence. What petitioner fails to tell the Court is that such investigation was done by trial counsel Larry Moore prior to petitioner's trial. Following petitioner's conviction and death sentence, and during the investigation and preparation of writ claims, that information was shared with Strickland. Lengthy discussions were conducted between Strickland and Mr. Moore. All of the various school, hospital, and mental health records which petitioner mentions in this complaint number one were in fact discovered by Moore and made available to both expert witnesses and Strickland. Those records, which detailed petitioner's admittedly traumatic childhood, reflected results of IQ testing; some evidence of disassociative tendencies and personality traits; drug abuse; gang affiliation; childhood sexual abuse; propensity for future violence; his juvenile history; and his suicide attempts and/or threats. The problem which faces petitioner is that *all* of these matters were admitted into evidence. The State, apparently convinced that no evidence would be likely to mitigate the beating to death of one's 83 year-old aunt, did not object to petitioner presenting any of this

evidence and accordingly, the trial court did not limit petitioner's presentation.

Petitioner took his best shot at mitigation at his trial. His lawyers uncovered much and presented it all to the jury. The jury was not swayed. Now petitioner complains that Strickland did not replow the same ground in application to the Texas Court of Criminal Appeals. The complaint is meritless.

5. <u>Complaint Number Two</u> (petition, page 1)

Petitioner is correct when he complains that Strickland never requested funds for additional intelligence testing of petitioner. What he neglects to tell the Court is why such funds were not requested.

Prior to his trial, petitioner was extensively tested by Dr. Raymond Finn, a Tarrant County forensic psychologist. Doctor Finn, is a well-respected expert who has testified in both state and federal courts in Texas and elsewhere. Doctor Finn testified as a defense witness at the punishment phase of petitioner's trial.

In his testimony, Doctor Finn discussed the various tests and evaluations which he conducted on petitioner at the request of Mr. Moore. The tests included the Wechsler Adult Intelligence Scale, III. This is the gold-standard IQ test for adults. Petitioner came out with an overall IQ score of 79, where 100 is average. This score put petitioner in the 20-25th percentile, which placed him in the low-average range. Doctor Finn also testified concerning his review of prior IQ testing conducted on petitioner. Those test scores were consistent with Doctor Finn's reported IQ score of 79, with some testing revealing an IQ as high as 100. It is generally accepted in the science of mental health – mental retardation that an IQ score of 60 or below is some evidence of retardation. Even given a plus/minus error rate of five points, there was no testimony and no evidence that any testing remotely suggested that petitioner fell into that range or was retarded or even close to retarded.

Petitioner essentially complains to this Court that Strickland did not once again engage in the pointless task of seeking further intelligence testing. Such testing had already been done and the results presented to the jury. The jury either found petitioner's IQ scores to be not mitigating or in the alternative, insufficiently mitigating to warrant a life sentence. The trial court did not limit petitioner's presentation of this IQ evidence or any other psychological opinions, and therefore no complaint was raised on direct appeal.

It was certainly not unreasonable or deficient for Strickland to refrain from seeking yet another IQ test for petitioner. In fact, under the circumstances presented by this case, it would have been unreasonable and pointless to have done so. Petitioner's second complaint is without merit.

      6.     <u>Complaint Number Three</u> (petition, pages 3-4)

Petitioner complains that Strickland failed to raise any mitigation claims in his state writ application. That is not exactly correct. Strickland raised the question of allowing evidence of the effect of serotonin levels on behavior to be developed post-trial. (Claim H, State writ application). Such evidence could arguably be considered mitigating. Beyond that however, no further mitigating issues were raised.

Petitioner does not offer a clue as to what claims he believes should have been raised other than those mental health and mental retardation issues addressed in the preceding complaints one and two. This "complaint" therefore is really nothing more than a conclusory and vague re-statement of petitioner's ill-founded belief that mitigation evidence, whether or not based on fact, should be raised.

Although it is apparently not the style in much post-conviction litigation, attorneys have a professional obligation to raise only such arguments as are supported by the facts and the law. Perpetual testing without a good faith basis or fishing for compliant experts is irresponsible and unprofessional. So too is raising spurious claims. A wholesale, non-selective adoption of every claim

or argument which a client demands his lawyer to raise puts the accused squarely in control of a case and reduces the lawyer to little more than a mouthpiece.

Petitioner has been represented at every stage of his case by unusually gifted and conscientious lawyers. Larry Moore (trial) and David Pearson (appeal) worked very hard in behalf of petitioner, leaving no stone unturned. Mr. Moore in particular was very cooperative with Strickland and willingly turned over and discussed files, reports, and notes compiled during his representation of petitioner. If there had been any additional mitigation evidence, Mr. Moore would have presented it for the jury's consideration. Had Mr. Moore failed to do so, Strickland would have raised that failure on petitioner's state writ application. Sadly for petitioner, such was not the case. This "complaint", like the preceding two, is unfounded and has no merit.

7.   Complaint Number Four (petition, page 2)

Petitioner is in error when he asserts that Strickland was "...found...in contempt for failure to timely file a state writ application on petitioner's behalf." The state habeas application was due on August 27, 2004. The application was actually filed on September 27, 2004.

On October 22, 2004, Criminal District Court Number One of Tarrant County, Texas, conducted a hearing to consider whether good cause existed for the untimely filing. After considering the evidence, that court found that good and sufficient cause existed for the untimely filing, that the untimely filing was not due to conscious disregard of responsibilities, but rather because of pressing legal responsibilities. The court further found that the State had not been harmed or disadvantaged by the untimely filing. The State did not object to the court's findings, and in fact, thereafter requested a two month extension of time in which to file its response to the application, thereby indicating that time was not of the essence.

At no time has it been suggested by any state court, or the district attorney, that Strickland

has acted with disregard for petitioner's interests. No court has found Strickland to be in contempt. Petitioner's complaint not only lacks merit, it is demonstrably false and reflects a lack of candor toward this Court.

8.   Additional Response

Strickland believes that it is important for this Court to understand that although petitioner claims "Mr. Strickland ....sought appointment" in the federal habeas action, that is another untrue assertion. To the contrary, Strickland advised federal magistrate judge Charles Bleil on November 3, 2005, that he did not wish to be appointed to represent petitioner in his federal proceedings. Strickland cited the very strained relationship between petitioner and him, pointing out that petitioner had filed a baseless grievance against him. Strickland candidly informed Judge Bleil that he believed it would be in everyone's best interest for petitioner to have new counsel. Judge Bleil listened patiently and carefully, but ultimately concluded that because of Strickland's familiarity with the case, he would appoint Strickland. Judge Bleil did so later than same day.

Strickland informed petitioner that he did not seek this appointment. Nevertheless, petitioner persists in his effort to mislead the court into believing that Strickland seeks to continue as petitioner's lawyer.

Strickland brought petitioner's case to the federal district court because he was obligated, both legally and morally to do so. Article 11.071 § 2(e), *Texas Code of Criminal Procedure*. On October 12, 2005, a motion for appointment of counsel was filed with this Court. No where in this motion does Strickland suggest that he is at all interested in continuing to assist petitioner, although he will certainly do so if so ordered by the Court.

On the other hand, Strickland has absolutely no objection to new counsel being appointed in petitioner's behalf. Strickland does however object to the substitution of counsel based on any of the

unfounded complaints raised by petitioner in the motion now before the Court.

9.   Conclusion.

Petitioner has been convicted of an unusually heinous crime and sentenced to death. Rather than assume any measure of responsibility for beating his elderly aunt to death with a baseball bat, petitioner continues to seek to blame others for the situation in which he now finds himself. Perhaps it is understandable that he would resort to such measures in a last-ditch effort to save himself. However, he should not be permitted to slander the character or impugn the integrity of the many trial, appellate, and writ lawyers who have worked in his behalf since 1999. Strickland respectfully requests that the Court find the allegations set forth in petitioner's motion to be factually unfounded. Strickland, however, takes no position on the question of substitution of counsel.

Respectfully submitted,

LAW OFFICES OF JACK V. STRICKLAND
The Bryce Building
909 Throckmorton Street
Fort Worth, Texas 76102
Telephone:  817-338-1000
Telecopier:  817-338-1020
E-mail: jvs1943@aol.com

_____
JACK V. STRICKLAND
State Bar No. 19397000

ATTORNEY FOR PETITIONER