IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| QUINTIN PHILLIPPE JONES, | § | |
|     Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:05-CV-638-Y |
| | § | |
| WILLIAM STEPHENS[1], Director, | § | |
| Texas Department of Criminal | § | (death-penalty case) |
| Justice, Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |

**MEMORANDUM OPINION AND ORDER ON REMAND
DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Quintin Phillippe Jones petitioned the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending that his conviction and death sentence are unconstitutional.  The Court dismissed Jones's petition as time-barred, and Jones appealed.  The United States Court of Appeals for the Fifth Circuit remanded the case for consideration of the intervening opinion in *Holland v. Florida*, 130 S. Ct. 2549 (2010).  Jones has filed a post-remand brief arguing that *Holland* allows equitable tolling.  Respondent filed a brief in opposition, and Jones filed a reply.

The Court concludes that *Holland* does not allow equitable tolling because here the untimely filing of the petition was a result of his counsel's ordinary negligence in miscalculating the deadline and

---

[1]The previously-named respondent in this action was Rick Thaler. On June 1, 2013, William Stephens succeeded Rick Thaler as the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.  Under Rule 25(d) of the Federal Rules of Civil Procedure, he "is automatically substituted as a party."

because the other alleged errors that Jones attributes to his federal habeas counsel, if true, did not cause the untimely filing. Furthermore, Jones made no independent effort to ensure the timely filing of his petition.

I.   <u>BACKGROUND FACTS</u>

Equitable tolling is a fact-intensive inquiry. The Court therefore sets forth in some detail the facts that underlie Jones's claim, as shown in the record and the parties' exhibits.

The Texas Court of Criminal Appeals ("CCA") appointed Jack Strickland as Jones's state habeas counsel on December 3, 2003. *Ex. A.*[2] Six days later, Strickland wrote Jones a letter stating he had been appointed and intended to visit Jones and asking Jones to provide his version of the events leading up to his conviction. Strickland also explained, among other things, that the deadline for filing the state habeas application was "etched in stone" and would not be extended. *Ex. B.* In his reply, Jones told Strickland he wanted to raise *Wiggins* and *Atkins*[3] claims in the state habeas application because he did not believe that his mental and social history were presented at trial the way they should have been. *Ex. C.* Two months later, Strickland wrote another letter reminding Jones to send the information Strickland had requested. *Ex. D.*

---

[2]The exhibits cited are attached to Jones's post-*Holland* brief, unless otherwise indicated.

[3]*See Wiggins v. Smith*, 539 U.S. 510 (2003); *Atkins v. Virginia*, 536 U.S. 304 (2002).

Strickland and his investigator then visited Jones in prison on July 12, 2004. *See Ex. F.* During this initial visit, Strickland and Jones discussed Jones's medical and psychiatric history. *Ex. F.* After Strickland's visit, Jones wrote him two more letters about the *Wiggins* and *Atkins* claims, providing case law and the names of places where Strickland could find his school and hospital records. *Ex. E, F.* The record does not show that Strickland answered these letters.

On September 28, 2004, Strickland sent Jones a copy of the state writ application that he had filed on Jones's behalf. *Ex. G.* The writ did not include a *Wiggins* or an *Atkins* claim.[4] Jones wrote five more letters to Strickland, asking why Strickland did not raise the claims, complaining of Strickland's lack of response, citing to case law and the American Bar Association Guidelines, and advising Strickland that the issues will be harder to bring up at the federal stage if they are not raised in state court. *Ex. H, K, M, O, Q.*

There is no indication in the record that Strickland responded to these letters from Jones. Jones wrote to the trial judge in February and September of 2005 asking for help in communicating with

---

[4]The state writ contained the following claims: (1) state and federal constitutional error under *Missouri v. Seibert*, 542 U.S. 600 (2004), based on the admission of a confession obtained through a "question-first, warn-later" interrogation tactic; (2)state and federal constitutional error in the delay of the appointment of counsel; (3) newly discovered evidence that the laboratory employee who testified at trial was not a credible witness, and (4) a due process claim seeking extra-record development of new scientific research concerning the effects of low serotonin levels on Jones's behavior. (1 SHR 20-42) (State Habeas Record).

Strickland, apparently to no avail. *Ex. N, R.* On May 2, 2005, however, Strickland responded to a letter from Jones's aunt, who had inquired on Jones's behalf. *Ex. L.* Strickland assured the aunt that Jones's lawyers were doing everything they could to gain him a new trial or commute his death sentence and would continue to work on his behalf. *Ex. P.*

On September 14, 2005, the CCA denied habeas relief. *Ex parte Jones*, 2005 WL 2220030, No. WR-57,299-01 (Tex. Crim. App. Sept. 14, 2005) (not designated for publication). The assistant attorney general ("AAG") assigned to the case wrote Strickland a letter stating, erroneously, that relief had been denied in **March** of 2005 and advising him of his duty to move for the appointment of federal habeas counsel and of the habeas deadline in 28 U.S.C. § 2244(d). *Respondent's Ex. A.* Strickland replied to the AAG the same day, enclosing a highlighted copy of the AAG's letter and stating that he was aware of his obligation in the matter. *Respondent's Ex. A.* The letter indicates that a copy was sent to Jones. *Respondent's Ex. A.* On October 5, 2005, Jones wrote Strickland, advising that he had seen the AAG's letter and asking that Strickland not get appointed in federal court. *Ex. S.*

This Court appointed Strickland as federal habeas counsel on November 3, 2005. In a letter dated November 15, Jones questioned how they could work together given Strickland's lack of communication in the past, and he asked Strickland to visit him. *Ex. T.* On

4

December 22, Jones again wrote to Strickland, stating he had not received any communication about the case and complaining that Strickland's state writ (which, he observed, was "filed late, I might add") did not raise his mitigating issues. Jones asked Strickland not to file anything in federal court except a motion to step down as counsel. Jones also advised that a friend was assisting him in filing a motion to appoint different counsel and notes that "the State Bar has stated you did not violate their rules but the media might see it differently." *See U.*

Jones filed a pro-se motion for appointment of different counsel in this Court on December 27, 2005, and reurged the motion on March 6, 2006. The pro-se motion alleged that Strickland did not investigate Jones's background of mental disorders, did not request funds to conduct intelligence tests on Jones, did not raise any mitigation claims in the state application, was held in contempt for untimely filing the state writ application,[5] and sought appointment as federal counsel against Jones's wishes. The motion accuses Strickland of having "no intention of helping the Petitioner's appeals," and being "allowed, and encouraged, to profit by sabotaging

---

[5]New counsel for Jones agrees that Strickland was not held in contempt. *Brief*, p. 34 n.6. On October 22, 2004 the trial court entered findings that the state habeas application had been filed 30 days late due to counsel's numerous significant and urgent professional responsibilities. The trial court recommended that the CCA accept the late filing. *Ex. I.* The CCA found good cause for the untimely filing and accepted the application as filed on November 10, 2004. *Ex. J.*

of a death row prisoner's appeals." *Motion for Appointment of Different Counsel*, p. 6 [doc. 9, 14].

On March 7, 2006, Strickland filed a response to the motion explaining why he believed Jones's complaints were meritless. *Response from Petitioner's Counsel* [doc. 16].  In it, Strickland stated that all the information in the school, hospital, and mental health records mentioned by Jones were discovered by trial counsel, admitted at trial, and made available to counsel, and that Jones is simply complaining that counsel did not "replow the same ground." Strickland stated that additional IQ tests were not needed because reliable testing had been done by a forensic psychologist who testified at trial, that Jones's score of 79 was outside the range of mental retardation even considering the standard measurement error, that the trial court did not limit the presentation of IQ evidence or any other psychological opinions, and that it would have been unreasonable to seek further testing under the circumstances. Strickland also pointed out that he did, in fact, raise a mitigation-related claim in the state writ application regarding the effect of serotonin levels on behavior. *Response from Petitioner's Counsel*, p. 4; (1 SHR 41, 122).  Strickland further wrote:

> Although it is apparently not the style in much post-conviction litigation, attorneys have a professional obligation to raise only such arguments as are supported by the facts and the law.  Perpetual testing without a good-faith basis or fishing for compliant experts is irresponsible and unprofessional.  So too is raising spurious claims. A wholesale, non-selective adoption of every claim or argument which a client demands his lawyer

6

> to raise puts the accused squarely in control of a case
> and reduces the lawyer to little more than a mouthpiece.
>
> Petitioner has been represented at every stage of his case
> by unusually gifted and conscientious lawyers. . . .  If
> there had been any additional mitigation evidence, [trial
> counsel] would have presented it for the jury's considera-
> tion.  Had [trial counsel] failed to do so, Strickland
> would have raised that failure on petitioner's state writ
> application.  Sadly for petitioner, such was not the case.

*Response from Petitioner's Counsel*, p. 4-5 [doc. 16].   On March 9,

2006, this Court denied the pro-se motion for different counsel.

During the time the pro-se motion was pending, three letters

were exchanged between Strickland and Jones.  In a letter from

Strickland dated January 12, 2006, responding to Jones's letter of

December 22, 2005, Strickland said he would "once again attempt to

address some of your concerns." *Ex. V.*  Strickland stated that he

was appointed as federal habeas counsel against his [Strickland's]

wishes and that under the circumstances, he will continue as counsel.

Strickland explained he would not file frivolous or meritless claims

"nor casually impugn the integrity or competence of your prior

attorneys."  Strickland advised that, given the unusually horrific

facts of the case, it was his opinion that all of Jones's lawyers

had done their best, and that Jones seemed "intent on blaming everyone

who has tried to assist" him "while seemingly ignoring [his] own

behavior." *Ex. V.*  Strickland also stated, incorrectly, that the

federal statute of limitations would expire one year from the denial

of the state writ, or September 14, 2006. He said he would keep Jones

advised of the progress, invited Jones to provide him with any

additional information or thoughts that he believed might be helpful, and hoped that their future relationship "proves less rocky." *Ex. V.*

Jones responded twice to this correspondence, once on January 22, and again on February 27, 2006.  The gist of both letters is that Jones asked Strickland to remove himself from the case because Strickland was sarcastic in his correspondence and would not raise the issues of mental retardation, Jones's mental hospital stay, and special education classes.  Jones then states, "Also, what should I expect during this federal appeal stage?  I know you told me that I had a year to file.  But what [does] the court expect in that time frame? And what are you supposed to do yourself? And what's expected of me?" *Ex. W, X.*

Jones's next letter is dated April 18, 2006, which, coinciden- tally, is the day the limitations period expired.  In it, he acknow- ledged that the Court denied his motion for different counsel and asked what type of appeal Strickland plans to file before the "September deadline." *Ex. Y.* Apparently, Strickland did not respond to this letter, triggering Jones to request assistance from the Court in a letter dated June 4.  *Ex. Z.*  The Court forwarded this letter to Strickland on June 16 and asked him to respond.  *Ex. ZA.*

Strickland provided a status update on June 28, 2006.  *Ex. ZB.* He explained to Jones the difference between an appeal, a state writ, and a federal writ.  Strickland stated he was in the process of again

reviewing the record to determine what claims may be available in federal court. He stated that he would be conferring with Jones by letter and in person on the "extra-record claim concerning your mental health issues" which was "of major concern."[6] Strickland explained that, of all the hurdles that apply to a state prisoner's federal habeas claim, the most important is the one-year statute of limitations. He said, "Under 28 USC 2244(d)(1), state prisoners ordinarily have one year from the date their conviction became final to file their federal petition." He then stated, again incorrectly, that Jones's federal petition was due one year from the date the state writ was denied, or September 13, 2006. Strickland also explained that he would represent Jones in clemency proceedings but that clemency, and habeas relief itself, are remote possibilities. He stated that he thought it was important for Jones to have a realistic view of his situation and closes, "I hope I have addressed your concerns." *Ex. ZB.*

On September 14, 2006, Strickland filed the federal petition and sent a copy to Jones [doc. 19]. His cover letter states:

> I know that you strongly believed that it was appropriate to raise the mitigation issue in this petition. I disagree. Your attorneys thoroughly investigated your

---

[6]Jones seems to argue that this was an unfulfilled promise to investigate Jones's mental impairments related to the *Wiggins* and *Atkins* claims. *Reply Brief*, p. 6 n.3. Given Strickland's previously asserted belief that such claims lacked merit, it more likely refers to the extra-record serotonin claim, which Strickland sought to develop in state habeas proceedings. *See Response from Petitioner's Counsel*, p. 4; (1 SHR 41).

mental health history.   Evidence of that history was
presented to the jury.   Two psychologists not only took
that history into account, but conducted additional testing
in order to render opinions about your competence and
mental status.  A psychiatrist examined you prior to trial.
The court submitted the mitigation special issue and your
attorneys argued the question to the jury.   In short, it
is my professional opinion, based on all of the information
which I have considered, that this issue was very well
investigated and presented.   The fact that the jury did
not believe the mitigation issue justified an affirmative
answer to the special issue does not raise a constitutional
claim.

*Ex. ZC.*

Respondent filed both an answer and a motion to dismiss the

petition.   The Court dismissed the petition as time-barred on

September 21, 2007, and the clerk mailed a copy of the judgment to

both Strickland and Jones [doc. 28, 29]. On September 27, 2007, Jones

wrote to Strickland, asking if he knew about the dismissal and what

his options were.   *Ex. ZD.*   Strickland replied on October 9 that he

had received the Court's judgment, was in the process of determining

what could be done, and had urged the district attorney to withhold

setting an execution date.   *Ex. ZE.*   Strickland did not appeal the

judgment of dismissal.

On February 27, 2008, the Court received a letter from Jones

stating he did not wish to abandon his appeal and had been unable

to contact Strickland. *Letter* [doc. 34]. Lydia Brandt was appointed

as new counsel on March 21, 2008.   On Brandt's motion, the Court

vacated the judgment of dismissal. *Order Granting Petitioner's Motion

for Relief from Judgment* [doc. 43].   After receiving additional

briefing from Brandt on the application of the statute of limitations, the Court again dismissed the petition as untimely. *Mem. Op. and Order Dismissing Petition for Writ of Habeas Corpus* (*"Dismissal Order"*) [doc. 59].

Relying on Fifth Circuit precedent as well as *Lawrence v. Florida*, 549 U.S. 327 (2007), this Court ruled that, absent "deceitful or other similarly egregious conduct," federal habeas counsel's actions constituted neglect, not the extraordinary circumstances necessary for equitable tolling. *Dismissal Order,* p. 10-12; *see Lawrence*, 549 U.S. at 336-37 (assuming equitable tolling is available under § 2244(d) and holding that "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling"). The Court also addressed whether its denial of the pro-se motion for different counsel contributed to the petition's being filed late. The Court concluded it did not because the motion was denied thirty days prior to the filing deadline, and Strickland was not relieved of his duties while that motion was pending. Strickland had 167 days from the date of appointment before the statute-of-limitations period expired. The Court found no evidence that Strickland relied on anything said or done by the Court in filing a tardy petition. *Dismissal Order*, p. 10-11. The Court also addressed Strickland's failure to file a reply to the motion to dismiss and his failure to appeal this Court's first dismissal order. The Court concluded that, while not admirable, these actions did not contribute to the lateness of the petition.

Even so, the Court rectified the situation by appointing new counsel and vacating its previous judgment. *Dismissal Order,* p. 8-9. Jones appealed this second dismissal order and, as noted, the case has been remanded for consideration under *Holland*, 130 S. Ct. 2549 (2010).

## II.  APPLICABLE LAW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), establishes a one-year statute of limitations for seeking federal habeas relief from a state-court judgment. 28 U.S.C. § 2244(d)(1). The limitations period is tolled, however, for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. § 2244(d)(2). Jones does not dispute that Strickland mistakenly filed the federal petition 149 days late by failing to account for the 149 days (prior to the filing of the state habeas application) when the federal limitations period was not tolled by any state case. The only issue before the court is whether the facts surrounding the representation authorize equitable tolling so that the petition may be considered timely.

The Supreme Court in *Lawrence* assumed without deciding that equitable tolling was available under § 2244(d). *Lawrence*, 549 U.S. at 336. Three years later, the Supreme Court explicitly held in *Holland* that equitable tolling was available under § 2244(d) where a petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in

12

his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (quoting *Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005)). *Holland* recognized that "serious instances of attorney misconduct" short of "bad faith, dishonesty, divided loyalty, mental impairment, or so forth," could meet the test for "extraordinary circumstances" and justify equitable tolling. *Id.* at 2563-64. In establishing the standard, the opinion emphasized that courts of equity "must be governed by rules and precedents no less than courts of law," but also recognized the need for flexibility and for avoiding fast adherence to "more absolute legal rules, which if strictly applied, threaten the 'evils of archaic rigidity.'" *See id.* at 2563. The *Holland* majority affirmatively acknowledged the rule in *Lawrence,* that a garden variety claim of excusable neglect such as a simple "'miscalculation' that leads a lawyer to miss a filing deadline" does *not* warrant equitable tolling. *See Holland*, 130 S. Ct. at 2564 (citing *Lawrence*).

The concurring opinion elaborated that "extraordinary circum-stances" for equitable tolling involve more than ordinary or gross negligence on the part of counsel, as these mistakes are constructively attributable to the client, at least in the post-conviction context where there is no constitutional right to an attorney. *Id.* at 2566 (Alito, J., concurring). Otherwise, there would be a basis for arguing equitable tolling in almost every case involving a missed deadline. *Id.* at 2567. Justice Alito also

13

observed that, "Although attorney negligence, however styled, does not provide a basis for equitable tolling, the AEDPA statute of limitations may be tolled if the missed deadline results from attorney misconduct that is not constructively attributable to the petitioner." *Id.* at 2568. Justice Alito observed that the alleged misconduct of Holland's attorney essentially amounted to abandonment which, if true, could suffice to establish extraordinary circumstances beyond Holland's control. *Id.; see Manning v. Epps*, 688 F.3d 177, 184 n.2 (5th Cir. 2012) (noting that attorney abandonment can qualify as an extraordinary circumstance for equitable tolling purposes).[7]

As for the diligence requirement, *Holland* teaches that the diligence for equitable tolling purposes is "reasonable diligence,"

---

[7]Jones asserts that the Supreme Court opinion in *Martinez v. Ryan* could change the analysis if it creates a constitutional right to counsel for state post-conviction proceedings. *Reply* at 17. The opinion in *Martinez* has since issued, and it did not establish a constitutional right to state habeas counsel. *See Martinez v. Ryan*, 132 S. Ct. 1309 (2012); *see also Trevino v. Thaler*, 133 S.Ct. 1911 (2013) (applying *Martinez* to Texas cases). It determined, as a matter of equity, that the ineffective assistance of state habeas counsel can excuse the procedural default of federal habeas claims asserting the ineffective assistance of trial counsel. *Martinez*, 132 S. Ct. at 1320. This is a narrow holding and "does not concern attorney errors in other kinds of proceedings." *Id.* Because of its limited application, the opinion also asserts that it "does not implicate the usual concerns with upsetting reliance interests protected by *stare decisis* principles." *Id.* at 1319.

This clear language precludes the application of *Martinez* outside the area of procedural default of ineffective assistance claims, and it affirms that the principles established and relied upon in *Lawrence* and *Holland* apply here. *See also Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (holding that the Court does not disturb the general rule that "when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause" under *Coleman*).

not "maximum feasible diligence." *Id*. at 2565. The Fifth Circuit has expanded on *Holland* in *Manning v. Epps*, holding that petitioners seeking to establish due diligence must exercise diligence even when they received inadequate legal representation. *Manning*, 688 F.3d at 185-86. Because pro-se petitioners are expected to comply with the AEDPA's statute of limitations, it would be unfair to expect less from petitioners who have counsel. *Id*. at 185; *see Lawrence*, 549 U.S. at 337 (recognizing that it would be perverse if providing prisoners with postconviction counsel deprived the states of the benefit of the AEDPA statute of limitations).

With these principles in mind, the Court first addresses whether Jones has established "extraordinary circumstances" under *Holland*.

### III. DISCUSSION

#### A. Extraordinary Circumstances

While not expressly finding that extraordinary circumstances existed[8], the Court in *Holland* observed that the following circum-stances, which violated fundamental canons of professional responsi-bility, may well constitute far more than "garden variety" or "excusable" neglect so as to allow for equitable tolling: in addition to counsel's filing a late petition and being unaware of the filing deadline, (1) Holland had sent many letters to counsel repeatedly emphasizing the importance of a timely filing, (2) counsel did not

---

[8]The Court set aside the district court's judgment, but remanded the case to the Eleventh Circuit to determine whether the facts entitled Holland to equitable tolling. *Holland*, 130 S. Ct. at 2565.

do the legal research to find out the proper filing date, despite Holland's having identified the applicable rules in his letters, (3) his counsel failed to inform Holland in a timely manner of the crucial fact that the state supreme court had decided his case, despite Holland's many pleas for that information, and (4) counsel failed to communicate with his client for a period of years, despite various pleas from Holland that counsel respond. *Id.* at 2564-65.

Jones argues that his limitations period must be equitably tolled because his case likewise involves violations of the Texas Rules of Professional Conduct and the American Bar Association Guidelines for capital defense counsel. Specifically, Jones asserts that Strickland made the following errors:

1. failed to conduct a mitigation investigation, despite Jones's repeated requests, because he perceived such an investigation as an attack on his colleagues in the criminal defense bar (*Brief* at 26-27);

2. filed his state habeas application thirty days late (*Brief* at 28);

3. did not file a reply to respondent's motion to dismiss (*Brief* at 29);

4. filed applications late in three other, unrelated state habeas cases (*Brief* at 29);

5. failed to communicate with Jones between January 12, 2006, and June 28, 2006 (*Brief* at 31);

6. failed to inform Jones that the state and federal petitions had been filed late (*Brief* at 31-32);

7. breached a duty of loyalty by being hostile towards Jones in his communications with this Court and by failing to pursue ineffective-assistance-of-counsel claims against Jones's former attorneys (*Brief* at 34-35);

16

8.   de-facto abandoned Jones after the untimely filing of the federal petition by filing no reply to the respondent's answer and motion to dismiss and filing no appeal of the dismissal, without notice to his client (*Brief* at 37-38).

Assuming the veracity of these allegations, none of Strickland's failures in this case are shown to have contributed to the tardiness of the petition.  As stated above, *Holland* requires that extraordinary circumstances stood in the petitioner's way "and prevented timely filing." *Holland*, 130 S. Ct. at 2562; *see Clarke v. Rader*, ___ F.3d ___, 2013 WL 3179570, No. 12-30252 (5th Cir. June 24, 2013) (denying equitable tolling where there was no evidence that a delay in notifying petitioner of the denial of his state petition contributed to the untimely filing of his federal petition); *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline").  The circumstances in *Holland* contributed to counsel's failure to timely file a federal petition and inhibited Holland's own ability to meet the filing deadline himself.   The same cannot be said in this case.

Jones does not allege and the record does not show how Strickland's alleged failure to conduct a mitigation investigation prevented a timely filing.   If anything, a decision to forego an investigation would have helped Strickland meet an earlier deadline.  Similarly, Strickland's 30-day delay in filing Jones's state application is insufficient to have caused the 149-day delay in this

17

Court.  Even more obvious, Strickland's untimely filings in unrelated state habeas cases have no asserted connection to this case.[9] Counsel's alleged failure to inform Jones that he had filed the state application late and to communicate with Jones between January and June of 2006 are not connected to the untimely federal filing. Moreover, Jones knew, at least as of December 22, 2005, that the state application had in fact been filed late. *Ex. U.* Strickland's alleged failure to inform Jones that the federal petition was filed late and his alleged de-facto abandonment by not replying to Respondent's motion to dismiss and not appealing the first dismissal order, as neglectful as these errors may be, occurred *after* the petition was filed and could not have prevented a timely filing.  Moreover, as this Court previously concluded, it addressed the situation by appointing new counsel and vacating its previous judgment. *Dismissal Order*, p. 8-9.

Finally, Jones's contention that counsel breached a duty of loyalty by being hostile to Jones in his communication with the Court and failing to pursue ineffective-assistance claims against Jones's former attorneys lacks any asserted relationship to the timing of the filing.  To the extent that Jones may be implying that

---

[9]In two of the cases, Strickland's tardy petition was excused due to a period of hospitalization and recuperation in July of 2008, more than two years after Jones's federal writ was due to be filed.  *See Ex. ZH, ZI.*  The remaining case involved a tardy state filing in 2005, the year before the federal writ was due in this case, for which the CCA also found good cause.  *See Ex. ZG.*

Strickland's alleged disloyalty caused him to neglect this case or erroneously calculate the due date of the federal petition, there is no indication of this in the record. On the contrary, Strickland wrote and visited Jones soon after his appointment in state court and discussed with Jones the medical, psychiatric, and special education records that would later become the source of friction between them. *Ex. F.* When Strickland wrote Jones in January 2006, he stated he would "once again attempt to address some of your concerns," indicating the matter had been previously addressed. *Ex. V.* During the time the case was pending in state court, Strickland apparently did not respond to Jones's repeated inquiries about the *Wiggins* and *Atkins* claims, but he did respond to a letter from Jones's aunt. *Ex. P.* In his letters to Jones, Strickland stressed the importance of meeting the filing deadlines in both state and federal court. *Ex. B, V, ZB.*

The applications filed by Strickland in both state and federal court raise well-drawn, substantive, federal constitutional claims that are founded in the existing record or seek extra-record development. They involve cutting-edge Supreme Court precedent, newly discovered evidence, and a new scientific theory in behavioral science. (1 SHR 2-44; doc. 19). The federal petition contains 34 supporting exhibits; it anticipates and responds to a procedural bar that was, in fact, later asserted by Respondent. [doc. 19, 26]. It shows a clear understanding of the AEDPA standard that is required

for obtaining relief and makes an argument to meet it.  Given Strickland's overall representation, this record shows nothing more than a garden-variety claim of neglect in Strickland's failure to account for the days in state court when no state filing tolled the limitations period.

To be sure, allegations of ineffectiveness, unprofessionalism, or de-facto abandonment that prevent the timely filing of a petition may justify tolling under *Holland,* even absent deceitful or other similarly egregious conduct.  But the record shows that the difficulties between Jones and Strickland involved Strickland's decision not to include what he believed to be frivolous claims and his refusal to discuss the matter with Jones after a certain point.  Jones does not, and cannot, argue that Strickland's refusal to press what he believes are meritless claims justifies equitable tolling.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983)(recognizing that an indigent defendant has no constitutional right to compel appointed counsel on appeal to press even non-frivolous points if counsel, as a matter of professional judgment, decides not to present those points).  Instead, Jones contends that Strickland refused to investigate these claims because he "perceived such an investigation as an attack on his colleagues in the criminal defense bar, whom he held in high regard." *Brief,* p. 26.

This factual allegation has no support in the record.  Jones attributes ill motive to Strickland's decision only by ignoring the

explanatory evidence in the record that contradicts it. *See Response from Petitioner's Counsel*, p. 4-5; *Ex. ZC* (Strickland's letter of September 14, 2006). Jones's assertion that Strickland acted on misplaced loyalty rather than his assessment of the merits is further undermined by the fact that new counsel, Brandt, filed an amended petition that did not include a mental retardation claim under *Atkins* nor did it allege that trial counsel overlooked mitigating evidence in violation of *Wiggins*. *See Motion for Leave to File Amended Petition* [doc. 57].

The circumstances in this case are unlike *Holland*. Holland's counsel did not file a petition until after Holland (who had independently discovered the omission while working in the prison law library) filed his own pro-se petition. Here, Strickland complied with what he calculated the deadline to be, and he had previously communicated that deadline to Jones on two occasions. Where Holland wrote to his counsel emphasizing the importance of a timely filing, it was Strickland who emphasized the importance of a timely filing here; Jones's communication focused solely on the *Wiggins* and *Atkins* claims. Counsel in *Holland* did not do the legal research to learn the proper filing date, despite Holland's providing the applicable rules to counsel; here, Strickland provided the applicable statute to Jones. *Ex. ZB.* Counsel for Holland failed to inform Holland in a timely manner that the state supreme court had decided his case; here, Strickland notified Jones within twelve days. *Respondent's*

*Ex. A.* Holland alleged a "near-total" failure of counsel to communicate over a period of years, while the alleged communication gap in this case was five months, with no apparent relationship to the filing of the petition. *See Ex. V,* ZB.

In the end, this case is about a miscalculated deadline that was clearly communicated to the client but went unnoticed and uncorrected. Such miscalculations do not warrant equitable tolling. *See Holland*, 130 S. Ct. at 2564; *Lawrence*, 549 U.S. at 336 ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."); *see also Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) ("Thus, when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause. . . . We do not disturb that general rule."). Under existing precedent, the Court finds that Jones did not face extraordinary circumstances that prevented the timely filing of his federal petition.

## B.  Due Diligence

The Court next considers whether Jones has demonstrated due diligence, which is a closer call. The majority in *Holland* did not decide whether Holland exercised due diligence, but it disagreed with the district court's conclusion that Holland did *not* exercise diligence. The Court observed that Holland (1) wrote his counsel letters seeking crucial information and providing direction, (2)

repeatedly contacted the state courts, clerks, and state bar association to have counsel removed, and (3) filed a pro-se habeas petition the very day he discovered that the AEDPA clock had expired. *Id.* at 2565. Jones argues that he, like Holland, exercised reasonable diligence in the following ways:

1.  he wrote numerous letters to Strickland requesting crucial information and providing direction (*Brief* at 9-11);

2.  he wrote two letters to the trial judge asking for help (*Brief* at 12);

3.  he filed a grievance against Strickland with the State Bar of Texas (*Brief* at 13); and

4.  he wrote a letter to this Court stating that he wanted to appeal the 2007 dismissal, after which the Court appointed new counsel and granted a motion for relief from the judgment (*Brief* at 20-21).

These facts are distinguishable from *Holland* in important ways. First, Jones's efforts to secure his right to appeal the 2007 dismissal are arguably diligent. But Jones does not show that such diligence, exhibited **after** the petition had already been filed, justifies the tolling of the **earlier** time period within which the petition had to be filed. *See Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004) (Sotomayor, J.) (affirming district court's rejection of equitable tolling where petitioner did not establish that he was diligent "during the period that he seeks to toll.").

Second, Jones took no independent steps to ensure that his federal petition was timely filed. The law requires Jones to do no more or less than a prisoner unrepresented by counsel, and "[i]t would

23

be perverse indeed if providing prisoners with postconviction counsel deprived States of the benefit of the AEDPA statute of limitations." *Lawrence*, 549 U.S. at 337; *see Melson v. Comm'r*, 713 F.3d 1086, 1089 (11th Cir. 2013) (finding no "due diligence" where petitioner took no independent steps to ensure that his federal habeas petition was timely filed).  Holland was kept uninformed about the status of his state habeas application and was therefore prevented from taking independent steps to ensure the filing of the petition.  Under these circumstances, it would be reasonable to conclude that Holland's repeated, unanswered requests for the information needed to take independent action amounted to reasonable diligence.

But Jones was not similarly hindered.  The CCA denied Jones's state writ application on September 14, 2005.  In his letter to Strickland on October 5, Jones acknowledges that the application had been denied. *See Respondent's Ex. A; Petitioner's Ex. S.* Jones knew that Strickland believed the federal deadline to be September 14, 2006, and, as of June 2006, Jones knew the statute of limitations was located in 28 U.S.C. § 2244(d)(1). *See Ex. V, ZB.* It would have taken very little effort to locate the statutory tolling provision in (d)(2), immediately below (d)(1).  It is true that Jones communicated with Strickland and the courts but his communication did not concern the filing of his petition--timely or otherwise--but the disagreement with Strickland over its contents.  Having taken no independent steps to ensure the timely filing of his petition, Jones

fails to show reasonable diligence for equitable-tolling purposes.[10] *See Doe*, 391 F.3d at 175 (holding that, even where extraordinary circumstances involve attorney incompetence, petitioner must demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time).

Jones argues that this focus is too narrow, that *Holland* only requires a defendant to have exercised reasonable diligence "to protect his legal rights." *Reply*, p. 4. He asserts that he exercised all the diligence *Holland* requires by filing a pro-se motion for different counsel and that, but for the Court's denial, "the legal jeopardy that Mr. Jones now faces could have been prevented altogether." *Reply,* p. 4. This is true only in retrospect, as Jones does not assert that the Court's denial of his motion for different counsel was erroneous when it was made. The Court finds no support in *Holland* that reasonable diligence exists when a petitioner seeks to remove counsel because he disagrees with the contents of the petition. Moreover, as the Court previously determined, the denial of different counsel did not prevent the timely filing of his

---

[10]In a footnote, Jones observes that his voluminous correspondence to Strickland "does not rebut evidence of his significant mental impairments," and he cites to his 2006 pro-se filing, typed with the assistance of another inmate. *Brief,* p. 20 n.1. This footnote could suggest that the reasonable diligence required of the mentally impaired petitioner is less than that required of petitioners with no mental impairments. But Jones does not actually assert that he has significant mental impairments; he merely refers generally in a footnote to the supposed existence of such evidence. The Court observes, too, that Jones's mental status apparently did not prevent him from filing pro-se motions in this Court, asserting a grievance with the State Bar, and providing legal authority and advice in his letters to Strickland.

petition, *Dismissal Order*, p. 10, nor would the appointment of different counsel have necessarily resulted in a timely petition. Jones's *post-hoc* argument would allow tolling in every case where a court had denied a request for new counsel, no matter the reason or validity of the ruling.

Because Jones did not take any independent steps to ensure that his petition was filed on time, he has not shown the reasonable diligence required for equitable tolling. *See Manning*, 688 F.3d at 186 (The "act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition.") (citing *Doe*, 391 F.3d at 175); *see also Palacios v. Stephens*, ___ F.3d ___, 2013 WL 3762674, No. 11-41080 (5th Cir. July 18, 2013) (denying equitable tolling because petitioner failed to exercise reasonable diligence in hiring an attorney and because the two week period he had after discharging his attorney was enough time to file a protective federal petition).

IV.  <u>CONCLUSION</u>

This Court has considered that there is a serious consequence to dismissing a federal habeas petition in a death-penalty case. Nevertheless, "courts of equity 'must be governed by rules and precedents no less than the courts of law.'" *Holland*, 130 S. Ct. at 2563. Jones does not provide authority, and this Court has found none, holding that circumstances that do not prevent a timely filing can nevertheless justify equitable tolling. On the other hand, there

26

is binding authority that the negligent miscalculation of the deadline is **not** grounds for equitable tolling-even in a death-penalty case. *See Holland*, 130 S. Ct. at 2564; *Lawrence*, 549 U.S. at 336.  Further, Jones has not shown that he acted with reasonable diligence in attempting to file his habeas petition during the period he seeks to toll.

Respondent's motion to dismiss the petition for writ of habeas corpus as time-barred under 28 U.S.C. § 2244(d) is **granted**.

SIGNED August 15, 2013.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE