IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| QUINTIN PHILLIPPE JONES, | § | |
|     Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:05-CV-638-Y |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal | § | (death-penalty case) |
| Justice, Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING PETITIONER'S MOTION TO ALTER OR AMEND THE JUDGMENT UNDER FED. R. CIV. P. 59(e)**

Petitioner Quintin Phillippe Jones has moved to alter or amend the Court's judgment on remand dismissing his petition for a writ of habeas corpus. *Motion to Alter or Amend* [doc. 103]; *Memorandum Opinion and Order* [doc. 101]. Among other things, Jones's motion asserts for the first time that the Court's 2005 order appointing his federal habeas counsel satisfies the "extraordinary circumstances" requirement for equitable tolling because the order undertook to protect Jones's right to a timely filed petition.[1] Respondent contends that this new argument may not be raised in a 59(e) motion and that, in any case, the appointment order does not provide the extraordinary circumstances necessary for equitable tolling. Respondent argues that the order is directed to "Petitioner" and not to counsel

---

[1]After appointing Jack Strickland for the purpose of "preparing, filing and litigating" a petition for writ of habeas corpus, the appointment order states, "It is further ordered that Petitioner shall timely file his federal petition for writ of habeas corpus.  The petition shall demonstrate that it is timely filed under 28 U.S.C. § 2244(d)(1)." *Order* [doc. 7]("Appointment Order").

alone, that it simply restates what is already required by statute, and that it did not prevent Jones from timely filing his petition.

I.

Upon careful reconsideration, the Court concludes that Jones's motion should be granted and that Respondent's motion to dismiss the petition as time-barred should be denied.  The Court does not reach these conclusions lightly.

Equitable tolling requires Jones to show both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstances stood in his way and prevented a timely filing.  *See Holland v. Florida*, 560 U.S. 631(2010).  The appointment order changes the analysis of both of these requirements.

A.

The 2005 appointment order, together with the following facts, satisfy the diligence requirement.  Seven days after the Court received this case on Strickland's motion to appoint counsel, Jones wrote a letter asking the Court not to appoint Strickland based, among other things, on the breakdown in communications between them during state habeas proceedings.  *Pro Se Motion to Appoint Counsel* [doc. 5].  Jones also wrote to Strickland, asking him not to "get appointed" in federal court.[2] *Ex. S.*[3]  Nevertheless, the Court appointed Strick-

---

[2] To clarify, Strickland did not seek to have himself appointed in this Court.  Texas law simply requires state counsel to file the motion once state habeas relief has been denied.  *See* Tex. Code Crim. Proc. Ann. art. 11.071, § 2(e) (West 2009).

[3] Exhibits cited are attached to Jones's *Post-Holland Brief* [doc. 86].

land because of his familiarity with the case and issued the appoint-
ment order instructing that "Petitioner" timely file the petition
and that the petition demonstrate its timeliness.

Jones then filed a pro-se motion to remove Strickland and appoint
different counsel, alleging that Strickland's failure (1) to timely
file the state writ application and (2) to investigate and present
certain mitigation-related claims, showed that Strickland "will not
represent Petitioner in a competent much less professional manner."
*Applicant's Pro Se Motion for the Appointment of Different Counsel*
at 2 [doc. 9] ("Motion to Substitute Counsel").  Jones also wrote
to Strickland, asking him to step down as counsel. *Ex. U.*  Strick-
land's response asserted (among other things) that the late filing
was excused by the state court for good cause and that it was not
found to be a result of a conscious disregard of professional respon-
sibilities.  Strickland also noted that he had advised the federal
magistrate that he did not wish to be appointed in this proceeding.
*Response from Petitioner's Counsel to Pro Se Motion for Appointment
of Counsel* at 5-6 [doc. 13].

In a second pro-se motion, Jones sought, in the alternative,
to have co-counsel appointed in the case.  *Applicant's Second Pro
Se Motion for the Appointment of Different Counsel* at 5 [doc. 14].
The Court denied both of the pro-se requests.  *Order Denying Pro Se
Motion for Appointment of Counsel* [doc. 17].  Both Jones and Strick-
land apparently acquiesced to this ruling. *See Ex. V, Y*.  Strickland

then filed the petition about six months later, after the statute of limitations deadline had passed. *Petition* [doc. 19].

The correctness of the ruling on Jones's pro-se motions is not before this Court.[4] Nevertheless, it is difficult to overlook the fact that Jones's concerns about Strickland's ability to provide "competent" and "professional" representation proved in retrospect to be justified. Even if he could not have known that Strickland would miss the filing deadline, Jones had taken multiple, timely steps toward ensuring competent habeas representation. Furthermore, the appointment order addressing the timeliness of the petition could reasonably have caused Jones to relax his vigilance regarding the exact filing deadline, as well as his obligation to make sure Strickland met it. In sum, Jones's independent efforts to avoid, to remove, and then to provide co-counsel for Strickland, all of which occurred during the period he seeks to toll, together with the appointment order, show that Jones exercised reasonable diligence in the pursuit of his federal habeas rights. *See Holland*, 130 S. Ct. at 2565 (holding that, in addition to other factors, Holland's efforts to remove counsel, "the central impediment to the pursuit of his legal remedy," constituted reasonable diligence).

---

[4] In this regard, the Court notes that the Supreme Court has since established an "interests of justice" standard for the substitution of counsel in death-penalty cases. *See Martel v. Clair*, 132 S. Ct. 1276 (2012).

B.

The Court also concludes that the 2005 appointment order, when considered with the other circumstances in this case, satisfies the extraordinary-circumstances requirement. Jones makes many allegations of unprofessionalism against Strickland, but he does not dispute that what actually prevented a timely filing was Strickland's negligent miscalculation of the deadline.[5] Such a "garden variety" claim of excusable neglect does not warrant equitable tolling. *See Holland*, 560 U.S. at 651-52; *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007). This rule is premised on the rationale that mistakes of counsel are constructively attributable to the client, at least in the post-conviction context, because the attorney is acting as the petitioner's agent. *Holland*, 560 U.S. at 656 (Alito, J., concurring); *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962)).

---

[5] By way of further explanation, Jones's *first* state habeas counsel, Wes Ball, was appointed on May 17, 2002, but filed nothing. On December 3, 2003, Ball was removed and Strickland was appointed in his place. Strickland was given 270 days to file a writ application, during which time the Supreme Court denied certiorari from the direct appeal and the limitations period began to run. *See* 28 U.S.C. § 2244(d). By the time Strickland's state application was filed, which tolled the limitations period, 149 days had elapsed. This is the exact number of days late that Strickland's federal petition was filed.

In the usual case, Texas inmates must file the state application no later than 180 days after appointment of habeas counsel or 45 days after the State's direct appeal brief is filed, whichever date is later, and one 90-day extension is permitted. *See* Tex. Code Crim. Proc. Ann. art. 11.071, § 4 (West 1995). Because of this, the federal limitations period is often tolled by an existing application on the very day the direct appeal becomes final and the limitations period would otherwise begin. Thus, it is commonly the case that no portion of the limitations period has elapsed before the filing of a state application. Strickland's calculation of the deadline in this case was consistent with these common circumstances.

Here, there was simple negligence that might normally be controlled by *Lawrence*. Upon further consideration, however, the Court concludes that the *Lawrence* rule should not be applied because the negligence occurred during the course of a mutually undesired attorney-client relationship that had broken down. To be sure, the friction between Jones and Strickland mainly concerned Strickland's refusal to pursue what he believed to be frivolous *Atkins* and *Wiggins* claims, claims upon which Jones has no right to insist. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (recognizing that an indigent defendant has no constitutional right to compel appointed counsel to press even non-frivolous points on appeal if counsel, as a matter of professional judgment, decides not to present those points). But the friction also concerned, albeit to a lesser extent, Strickland's inability to meet a state filing deadline, something Jones has a right to insist upon. *Motion to Substitute Counsel* at 1-2 [doc. 9]. The Court concludes that equity should not compel a mutually undesired agency relationship that, in the end, proved entirely fruitless for the client, who had made diligent efforts to avoid it in the first place. *Cf. Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396-97 (1993)(holding that dismissal of claim because of counsel's late filing in bankruptcy case does not impose an unjust penalty on the client who "voluntarily chooses" his attorney); *Link*, 370 U.S. 626, 633-34 (1962) (Harlan, J.)(holding that client in personal injury action cannot avoid the consequences of the acts or

omissions of his "freely selected" lawyer-agent); *see also Crutcher v. Aetna Life Ins. Co.,* 746 F.2d 1076, 1083 (5th Cir. 1984) (denying relief for attorney incompetence where client voluntarily chose his attorney because this voluntary choice is "at the heart of our representative litigation process"); *Lucas v. Abbott Labs.,* No. 3:12cv3654-B, 2013 WL 2905488, *7 (N.D. Tex. June 13, 2013) (holding that plaintiffs "voluntarily chose" their attorney and cannot avoid the consequences of the acts or omissions of this freely selected agent).

This is not to say that capital habeas petitioners may have the appointed counsel of their choosing or can dictate the claims to be raised by counsel, but simply acknowledges that the agency rule that makes a client responsible for his lawyer's acts or omissions is founded on, at least, a voluntary relationship. The record is abundantly clear that, while they acquiesced to this Court's orders, Jones and Strickland had both taken affirmative steps to avoid Strickland's appointment in federal court. Strickland's failure to reply to Respondent's motion to dismiss and his failure to appeal the Court's first dismissal order, while they occurred after the filing of the petition, demonstrate just how broken the relationship continued to be, even after appointment. Strickland had given his "whole-hearted" approval to another attorney to speak to Jones and pick up the reigns of this case. *Strickland's 2008 Letter to the Court* [doc. 33].

Assuming *Lawrence* does not control, the granting of equitable tolling still would require extraordinary circumstances to have prevented Jones from timely exercising his rights. Respondent points out that the 2005 appointment order did not "prevent" Jones from filing his petition or mislead him about the due date; it merely ordered what was already required by statute. Respondent is correct. This case is not like previous cases that allowed equitable tolling due to reliance on a court order that misleads or provides incorrect information. *E.g., Prieto v. Quarterman*, 456 F.3d 511, 514-15 (5th Cir. 2006)(allowing for equitable tolling in death penalty case where court order granting extension of time ordered petitioner to file his petition well after the statutory deadline); *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002)(holding that extraordinary circumstances have been found where petitioner is misled by an affirmative but incorrect representation of a district court on which he relies to his detriment); *United States v. Patterson*, 211 F.3d 927, 932 (5th Cir. 2000)(allowing equitable tolling where court order granted, on the last day of the limitations period, pro-se request to dismiss petition without prejudice and permitted later refiling); *see also Pliler v. Ford*, 542 U.S. 225, 232 (2004) (acknowledging that procedural instructions from a court regarding abeyance or dismissal can "run the risk of being misleading"); *Spottsville v. Terry*, 476 F.3d 1241, 1245-46 (11th Cir. 2007)(allowing equitable tolling where appeal from state habeas proceeding was done incorrectly but in

8

accordance with instructions in federal habeas court's order of abeyance). But as the Court has already observed, the appointment order reasonably could have caused (and probably did cause) Jones to relax his vigilance as to the filing deadline. In the unusual circumstances of this case, where petitioner anticipated he would receive "incompetent" representation and his timely requests to avoid it were denied in an order that attempts to address his concerns about competence and timeliness, the Court concludes that is enough. A stricter interpretation of the meaning of "prevent" would not be in keeping with the spirit of *Holland*, which similarly rejected as "too rigid" a standard that would have required "bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part." *Holland*, 560 U.S. at 634.

Jones maintains, based on *Ross v. Varano*, 712 F.3d 784, 802-03 (3rd Cir. 2013), that Strickland exhibited "extreme neglect" in "missed deadlines, overall failure to communicate, and inaccurate and misleading assurances concerning the status of legal proceedings." *Motion* at 4. The record does not support the allegations of mis-leading assurances concerning the "status" of legal proceedings or an "overall" failure to communicate. Strickland's untimely state petition, filed thirty days late, did not cause the 149-day delay in this Court, and Strickland timely communicated to Jones important rulings as well as the federal deadline as he believed it to be. Counsel complied with the deadline, as he calculated it to be. For

all of Jones's allegations, there is no factual support to conclude that any attorney action--other than Strickland's negligence in calculating the due date--caused the untimeliness of the petition.

Jones also contends he should be entitled to equitable tolling due to his limited intellectual ability and education, poor mental health, and limited resources while incarcerated. The record clearly does not show that Jones's mental status or incarceration status have been "severe obstacles" preventing him from pursuing his rights. *See Robertson v. Simpson*, 624 F.3d 781, 785 (6th Cir. 2010)(recognizing that several courts of appeal have held that, for the mental incapacity of a petitioner to warrant equitable tolling, petitioner must demonstrate that the incompetence affected his or her ability to file a timely habeas petition); *see also Scott v. Johnson*, 227 F.3d 260, 263 n.3 (5th Cir. 2000)(noting that inadequate prison law library does not constitute a "rare and exceptional" circumstance warranting equitable tolling). Jones's own exhibits reflect the opposite: Jones has written several letters to counsel asserting legal claims and providing legal authority. He apparently filed a grievance with the State Bar. He wrote letters to the state judge and lodged pro-se filings and letters in this Court asserting his federal habeas rights. The fact that Jones contends he had help with some of these things shows only that he knows to ask for help; it does not demonstrate that his allegedly poor mental health or the conditions of incarceration prevented him from doing anything. *See*

*Blount v. Biter*, No. SACV 12-865 VBF (AN), 2012 WL 3150943, *6 (C.D. Cal. Aug. 1, 2012)(stating that for equitable-tolling purposes, petitioner's assertion that he received help from his father amounts to a concession that he, unlike many prisoners, was able to obtain legal assistance from a source other than the prison law library).

The Court acknowledges the observation in *Lawrence* that it would be perverse if providing prisoners with post-conviction counsel deprived the states of the benefit of the AEDPA statute of limitations. *Lawrence*, 549 U.S. at 337. But the post-conviction representation provided here was unwanted by both the client and the attorney alike. The Court also observes that the perfect storm of post-conviction counsel in this case was likely not the sort of counsel contemplated by the Supreme Court in *Lawrence*. Jones's first appointed state habeas counsel filed nothing and was terminated after seventeen months. Failing to account for this unusual passage of time, Strickland filed an untimely petition in this Court. And new federal habeas counsel, appointed in 2008 to represent Jones for the sole purpose of challenging the dismissal of his petition as time-barred, failed to bring the 2005 appointment order to this Court's attention until a post-judgment motion.

The flexibility inherent in an equitable procedure allows this Court to consider these unusual circumstances and to "meet new situations that demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices." *Holland*,

11

130 S. Ct. at 2563.  The Supreme Court has recognized the need for avoiding fast adherence to "more absolute legal rules, which if strictly applied, threaten the 'evils of archaic rigidity.'"  *See Holland*, 130 S. Ct. at 2563; *Patterson*, 211 F.3d at 931 (holding that "we must be cautious not to apply the statute of limitations too harshly").  So while *Lawrence* dictates the denial of equitable tolling for a negligently miscalculated deadline, the application of this absolute rule would impose archaic rigidity given the rare and exceptional circumstances present in this case: the petitioner lodged multiple, timely requests to avoid counsel's appointment based, at least in part, on concerns about counsel's previous failure to meet a state deadline, and the Court nevertheless forced the continuation of a mutually undesired attorney-client relationship in an order that, while not misleading or preventing Jones from doing anything, probably caused Jones to relax his vigilance regarding the federal deadline.

## II.

The Court turns next to whether Rule 59(e) is the proper vehicle for raising this new argument.  Grounds for granting a Rule 59(e) motion to alter or amend the judgment include (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct clear error or prevent manifest injustice.  *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).  It is "an extraordinary remedy that should be used sparingly," but courts have a great deal of discretion in

12

ruling on a 59(e) motion.  *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

Respondent does not argue against manifest injustice.  Citing *Templet*, he argues only that Jones's new argument could and should have been presented before now.  *Templet*, 367 F.3d at 478-79 (holding that 59(e) is not the proper vehicle for rehashing evidence, legal theories or arguments that could have been raised before judgment was entered).  Jones replies that, irrespective of whether the argument should have been raised before, it may now be considered to prevent manifest injustice.

The Court agrees for several reasons.  First, the grounds for granting a 59(e) motion set out in *Benjamin Moore* are listed in the alternative, such that an argument that does not satisfy ground (1) or (2) could nevertheless satisfy the "manifest injustice" ground in (3).  Second, there is no general definition of manifest injustice; it is a case-by-case decision based on equitable considerations. *See Bender Square Partners v. Factory Mut. Ins. Co.*, No. 4:10cv4295, 2012 WL 1952265, *4 (S.D. Tex. May 30, 2012) (agreeing that manifest injustice requires a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy)(citations omitted).  Third, this Court is required to strike the proper balance between the need for finality and the need to render a just decision on the basis of "all the facts."  *See Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d

13

350, 355 (5th Cir. 1993).  Because the 2005 appointment order is an indisputable fact that changes the equitable-tolling analysis, the need to render a just decision outweighs the need for finality. Granting the 59(e) motion would prevent a manifest injustice, namely, the denial of federal habeas review in a death-penalty case because of the compounded errors of appointed counsel.  Were this Court to deny Jones the opportunity to have his habeas petition heard at this point, he will have been subject to the errors of not one but three post-conviction attorneys.  Equity should not tolerate these results, especially in a death-penalty case.

III.

Jones's motion to alter or amend the judgment [doc. 103] is **granted**.  This Court's judgment dismissing Jones's habeas petition [doc. 102] is **vacated**.  The clerk is directed to **reopen** these proceedings effective the date of this order.  Jones shall file an amended petition not more than **ninety days** from the date of this order. Respondent shall answer the amended petition within **sixty days** of the date the amended petition is filed.  Jones shall file any reply not more than **thirty days** after the date the answer is filed.

SIGNED February 6, 2014.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/ks:bb