IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| QUINTIN PHILLIPPE JONES, | § | |
|     Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:05-CV-638-Y |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal | § | (death-penalty case) |
| Justice, Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |

## OPINION AND ORDER DENYING MOTION FOR FUNDS

The due date for Quintin Phillippe Jones's amended petition in this case is June 23, 2014. On June 3, 2014, Jones filed his Opposed First Motion for Funding ("Motion") [doc. 124].[1] Jones seeks $30,000 "for mitigation investigative services to assist him in the preparation of ... an ineffective-assistance-of-counsel *Wiggins* claim" for his amended habeas petition in this death-penalty case. Respondent has filed a response in opposition [doc. 125]. For the following reasons, the Court denies the request for funds.

## I.   Background Facts

A recitation of background facts is necessary to place this funding motion in context. In 2005, the Court appointed federal habeas counsel Jack Strickland for the purpose of preparing Jones's

---

[1] Jones files this Motion under objection because the Court denied his original request on May 23, 2014, to file it under seal and proceed ex parte [doc. 123]. The Court denied the request because Jones did not demonstrate a case-specific need for confidentiality as required by statute. *See* 18 U.S.C. § 3599(g). It was, and apparently remains, Jones's position that his argument to support the funding request is itself confidential and privileged. *Motion* at 5-6.

application for writ of habeas corpus [doc. 8].  That petition was filed but dismissed as time-barred on September 21, 2007 [doc. 28]. Jones's current lead counsel was appointed as substitute counsel on March 21, 2008.  The Order Appointing Substitute Counsel states that she was appointed "to adequately represent [Petitioner's] interests in federal court and pursue on his behalf whatever legal avenues may be available to him." *Order Appointing Substitute Counsel* [doc. 31].

Repeated assertions in the funding motion to the contrary notwithstanding, this Court has not limited the scope of substitute counsel's representation or her claimed compensation for that representation in any way.  Since her appointment, present counsel has mainly pursued equitable-tolling issues in this Court and on appeal.  She has not pursued equitable tolling issues exclusively, however.  In February of 2009, present counsel prepared and submitted for filing an 84-page amended petition raising four new claims in addition to the claims contained in the initial petition filed by Strickland.  *Amended Petition of Jones (filed as Exhibit to Motion for Leave)* [doc. 57-2] ("Amended Petition").  The new claims allege (1)"actual innocence" of capital murder due to "settled insanity" caused by mental impairments; (2) a violation of the right to reasonable doubt and presumption of innocence, due to the absence of mental-impairment evidence at the guilt/innocence phase of trial; (3) the denial of the right to a fair defense, based on the absence of mental-impairment evidence at the guilt/innocence phase of trial;

2

and (4) ineffective assistance of trial counsel for failing to timely investigate, develop, and present, in all phases of trial, crucial information about Jones's mental impairment and life history. (*Amended Petition* at 8, 35, 39, 41.)

These claims were all based on the same set of alleged facts, namely, that Jones had a long-standing, involuntary addiction to alcohol and to "polysubstances," had suffered from traumatic physical and sexual childhood abuse, and had dissociative personality disorder caused by the abuse. (*Amended Petition* at 8-13.) For support, the amended petition relied on lead trial counsel's billing records [doc. 57-3], the 2001 report of the trial team's psychologist, Dr. Carol Wadsworth [docs. 57-2]; as well as the trial testimony of a another defense expert, Dr. Raymond Finn; and the trial testimony of Jones's sister; Jones's girlfriend; and the State's lead investigator. All variously described Jones's use of drugs and alcohol, childhood sexual abuse by siblings, suicide attempts, self-injuring behavior, and Jones's alternate personality, "James." (*Amended Petition* at 8-13.)

The ineffective-assistance claim in particular asserted that trial counsel failed to timely investigate, devlop, and present in all phases of trial "crucial information about Mr. Jones's mental impairments and his life history." (*Amended Petition* at 41.) As this Court has previously observed, however,[2] the amended petition

---

[2] *See Memorandum Opinion and Order on Remand Dismissing Petition for Writ of Habeas Corpus* at 21 [doc. 101].

3

did not actually identify any overlooked mitigating evidence; rather
it focused on the timing of the investigation.  It asserted that
counsel's late investigation resulted in a failure to make strategic
choices and a failure to integrate into all phases of trial "an
effective theory of the case," and deprived Jones of a "fair defense."
(*Amended Petition* at 42-46.)

     The Court denied leave to file the amended petition when the
Court dismissed the original petition as untimely in 2009 [doc. 60].
While the case was on appeal, however, the Supreme Court issued
*Holland v. Florida*, 560 U.S. 631 (2010), which signaled a change in
equitable-tolling analysis.  The case was remanded for this Court
to consider *Holland* in the first instance, and the Court initially
dismissed the petition again.  See *Memorandum Opinion and Order on
Remand Dismissing Petition for Writ of Habeas Corpus* [doc. 101].
The Court then granted equitable tolling based on a new argument made
for the first time in Jones's 2013 post-judgment motion but which
was available when substitute counsel was first appointed in 2008.
See *Memorandum Opinion and Order Granting Petitioner's Motion to Alter
Judgment* [doc. 113].

     In the context of recognizing the unfairness that would result
to Jones from the "perfect storm of post-conviction counsel" were
the Court to reject counsel's belated equitable-tolling argument,
this Court noted that substitute counsel had failed to bring to light
an argument that was available when she was first appointed "to

4

represent Jones for the sole purpose of challenging the dismissal of his petition as time-barred." *Memorandum Opinion* [doc. 113] at 11. Counsel has often repeated the quoted statement out of context in an attempt to show that her representation thus far has been limited to the issue of equitable tolling, thereby implying that this is the first opportunity for counsel to evaluate the issues for which she seeks funding. See *Motion* at 5, 7; see also *Second Motion Opposed Motion for Continuance* at 2-3 [doc. 126]; *Opposed Motion for Continuance* at 1-2 [doc. 116].

The assertion that substitute counsel has been limited in the scope of her representation is contradicted by the broad language of her appointment order, which authorized her to pursue "whatever legal avenues" were available to Jones. It is also belied by the actual work she performed on the amended petition--for which she was compensated in 2009. Whether or not counsel now deems her prior efforts sufficient, there is no question that counsel previously investigated, prepared, and was compensated for an amended petition containing substantially the same issues for which she now seeks funding. The Court now turns to that request.

## II.  Applicable Law

A district court may authorize expenditures for investigative or expert services that the court finds to be "reasonably necessary." See 18 U.S.C. § 3599(f). For requests that exceed $7,500, a petitioner must further show that the excess funding is "necessary

to provide fair compensation for services of an unusual character or duration" and receive approval from the chief judge of the circuit or his designee. *See* 18 U.S.C. § 3599(g)(2). A district court does not abuse its discretion in denying funds when a petitioner has "(a) failed to supplement his funding request with a viable constitutional claim that is not procedurally barred, or (b) when the sought-after assistance would only support a meritless claim, or (c) when the sought-after assistance would only supplement prior evidence." *Woodward v. Epps,* 580 F.3d 318, 334 (5th Cir. 2009) (discussing predecessor statute) (citations omitted).

Even where a petitioner establishes a nexus between the requested services and a claim of a constitutional dimension, however, the statute is not intended to fund fishing expeditions. *See, e.g., Lynch v. Hudson*, No. 2:07-cv-948, 2009 WL 3497486, *14 (S.D. Ohio Oct. 29, 2009) (denying request made "out of an abundance of caution" to re-investigate mental retardation claim through additional testing); *Patrick v. Johnson*, 48 F. Supp. 2d 645, 647 (N.D. Tex. 1999) (holding that statute was not designed to provide habeas petitioners with unlimited resources to investigate speculative claims); *DeLong v. Thompson*, 790 F. Supp. 2d 594, 616-17 (E.D. Va. 1991) (holding that proposed investigation of trial counsel and trial judge amounted to "fishing expedition"). While § 3599(f) entitles a petitioner to reasonably necessary investigative services, it does not authorize federal habeas "retrials." *See Williams v. Taylor*, 529 U.S. 362,

6

386 (2000) (Stevens, J., plurality op.) (explaining the purposes of the Anti-Terrorism and Effective Death Penalty Act).

### III.  **Discussion**

Jones seeks $30,000 to retain an investigator to perform a 400-hour mitigation investigation in accordance with the 2008 American Bar Association Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases.  *See Ex.* 5 (estimate by proposed mitigation investigator).  Jones concedes that the issue he intends to investigate--trial counsel's effectiveness--was not raised in state habeas court and may be procedurally defaulted.  Thus, he also intends to use funds to demonstrate that state habeas counsel was ineffective in order to overcome any procedural default under *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012) (holding that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").  *Motion* at 23-24.

Generally, Jones contends that (1) trial counsel unreasonably narrowed the mitigation investigation in light of the information they possessed and due to self-imposed time constraints and (2) an investigation into what information would have been discoverable by effective counsel has never been conducted by any previous counsel.

7

### a.  Reasonable Necessity

The motion does not identify the existence of a lead that trial counsel failed to follow or demonstrate what Jones expects to find with a new investigation.  It identifies four "red flags" that need to be investigated:  severe, long-standing involuntary alcohol addiction; physical and sexual childhood abuse; long-standing and involuntary addiction to poly-substances; and dissociative disorder as a result of physical and sexual abuse.  But Jones does not explain why these issues, discussed more fully below, are "red flags" requiring investigation beyond what trial counsel did.  The motion simply concludes that trial counsel "likely" failed to conduct an adequate mitigation investigation into Jones's life history and proposes what appears to be a full-blown psychosocial history investigation, including genetic and environmental influences; maternal and paternal history of drug and alcohol abuse, suicidal tendencies, and gambling addiction; his home life; sexual molestation; mental health, including special education, emotional disturbance in fourth grade, self-injury, and drug abuse; and "delay in the appointment of counsel."[3]  *Motion* at 26-27.

In support, the motion asserts that, although an investigator was appointed at least five months before voir dire began, the

---

[3]This latter request to investigate the delay in the appointment of counsel refers to a claim raised by Strickland in Jones's original petition.  *See Petition* at 3[doc. 19].  It abruptly appears on the last page of the 28-page motion and contains no argument.  As such, there is nothing for this Court to decide vis-a-vis this claim.

investigation only began the month before trial (according to billing
records)--after voir dire had begun.   The motion contains general
assertions of deficient investigation based upon the hours billed
by trial counsel and the investigator, Janie Brownlee, for
interviewing witnesses.  It also states that there is no work product
from Brownlee, such as interview notes, social history, genogram,
or timeline, and no record that the defense attempted to locate
"former teachers or administrators about Mr. Jones's placement in
special education, an evaluation of his emotional disturbance in
fourth grade, or his academic limitations."  *Motion* at 12, 13.  The
motion concludes that "there does not appear to have been sufficient
investigation" into Jones's drug and alcohol use, a potential
involuntary intoxication defense, or his intellectual functioning.
*Motion* at 14.

While Jones's proposed mitigation investigator states that 2008
ABA guidelines require a minimum of one year's preparation and between
350 and 800 hours to adequately prepare for a capital defense, Jones
provides no authority that the ABA guidelines are the standards for
a reasonable trial investigation in 2001 when Jones was tried or
are the current standards for federal habeas representation.
Moreover, the investigative hours spent by the defense team as a whole
are not clear from the billing records, nor do the billing records
consistently identify persons sought, witnesses interviewed, or
matters investigated.   Given the other evidence in the record,

9

discussed below, the Court does not view these circumstances as demonstrating a reasonable need to conduct a 400-hour investigation.

Notably absent from the motion is an assessment of the information obtained by the trial team's two mental-health experts, Dr. Raymond Finn and Dr. Carol Wadsworth.  Dr. Finn's testimony to the jury, for example, indicates that he interviewed Jones's girlfriend, brother, and sister.  (35 RR 139.)  He also looked at school records from the age of four until high school, psychiatric hospitalization records from John Peter Smith Hospital, and police investigative reports.  (35 RR 140.)  The hospital records, which apparently concern a suicide attempt by Jones, were admitted into evidence.  (35 RR 141.)  Finn also administered to Jones the Wechsler intelligence test, the Rorschach "inkblot" test of personality, a court competency test, the Gudjohnnson suggestibility test, a psychopathy checklist, and a Violence Risk Appraisal Guide.  (35 RR 142-44.)

Dr. Wadsworth diagnosed Jones in 2001 with heroin and cocaine dependence, dysthymic disorder (early onset), reading disorder, disorder of written expression, borderline personality disorder, antisocial personality disorder, and pain secondary to a self-inflicted gunshot wound to the chest.  Her 2001 report identifies heavy alcohol abuse beginning at age 11; near daily marijuana use from age 12 to 20; inhalant use; the use of Valium, codeine, Tylenol pain pills and other prescription drugs when available; methamphet-

10

amine use; daily cocaine use from age 14 to 20; crack use; and daily heroin use from age 15 to 20. She describes other syndromes, including "borderline personality organization," with symptoms of suicidal and self-mutilating behavior, and dissociation. She states that Jones's school records indicate "long term emotional distur-bance," including an incident in fourth grade when Jones brought an unloaded pellet gun to school, placed it on his forehead, and pulled the trigger several times. She states Jones's history includes sexual abuse and neglect. She describes a suicide attempt followed by treatment in "JPS's psychiatric facility" at age 16 and enrollment in "Charter" for one week at age 18. She describes his sister's hospital admission for suicidal tendencies, a brother who abused alcohol and drugs, a father who abused alcohol, and a mother who used crack and gambled extensively. Jones's educational and employment history also is described in some detail. *Psychological Evaluation* [doc. 57-3]. Except to acknowledge how much they were paid and that the files of Dr. Finn are no longer available, the motion fails to attribute the work of these two defense-team members that is apparent in the record.

The motion asserts that the investigation requested has never been conducted by any previous counsel but, as discussed above, present counsel must have completed what she considered sufficient investigation to support the amended petition that she submitted in 2009. It also asserts that present counsel (in contrast to the

insufficient efforts of Strickland), "have learned that by the age of 24 (since the age of 13), Petitioner engaged in nearly 11 years of heavy, constant drug and alcohol abuse," and asserts that "at no time did [Strickland] ask [Jones] about his drug and alcohol abuse."[4] Present counsel assert that they "have learned that Petitioner began using marijuana at the age of 12... [and] began to drink large of amounts of alcohol ... [and] was snorting cocaine, snorting heroin, using cocaine, crank, and heroin intravenously, and also began to smoke crack cocaine." *Motion* 19.  In truth, all of this information "learned" by present counsel appears in Dr. Wadsworth's 2001 report [doc. 57-2].  It is also, to some extent, present in the trial record. (35 RR 10, 33, 35, 69, 73-74.)  This testimony, and more, was cited in the proffered 2009 amended petition.  *Amended Petition* at 8-13 [doc. 57-1].  To the extent the motion implies that any of this information has been newly discovered by recent efforts of present counsel, it contradicts the record.

The motion asserts that present counsel must investigate "what information would have been reasonably discoverable had trial counsel not foreclosed investigation into certain information" but does not identify what was, in fact, foreclosed or what present counsel hopes to find. *Motion* at 6.  The motion fails to acknowledge the full scope

---

[4]However, in a letter written by Jones to Strickland in 2004, and provided to the Court by current counsel, Jones states that, during a recent visit, "you asked about my medical records (gun shots, and when I was admitted to the nuthouse) and my school records when I was in special ed classes." *Exhibit F to Jones's Post-Holland Brief* [doc. 86-6].

of the investigation that was done by the trial team and the evidence presented to the jury, and rests on the assumption that every habeas petitioner is entitled to re-do the mitigation investigation under current ABA guidelines to see what may have been missed.  The funding statute is not designed to provide petitioner with unlimited resources to investigate speculative claims. *Patrick*, 48 F. Supp. 2d at 647. Jones does not demonstrate a reasonable necessity for the funds sought.  *See Wilkins v. Stephens*, 2014 WL 1202524, at *12, No. 13-70014 (5th Cir. Mar. 25, 2014) (stating that habeas petitioner is not entitled to investigative funds when he offers little to no evidence that the proposed investigative avenues hold any significant chance for success).

### b.  Services of an Unusual Character or Duration

Because Jones's request for $30,000 exceeds the statutory limit of $7,500, he must further show that the excess funding is "necessary to provide fair compensation for services of an unusual character or duration" and receive approval from the chief judge of the circuit or his designee.  *See* § 3599(g)(2).  The motion does not address this issue.  It is therefore properly denied for the additional reason that it is inadequate to certify to the Fifth Circuit.

### c.  Bars to Litigation

Jones concedes that the claim for which he seeks funds is unexhausted, but argues that this does not preclude funding because *Martinez* would excuse any procedural bar caused by Strickland's

13

ineffective representation in the state habeas proceedings. *Motion at 23*. Respondent argues that Jones's reliance on *Martinez* is misplaced because *Martinez* does not address funding in federal court. Respondent also asserts that Jones's argument would require funding for every petitioner with an unexhausted claim of ineffective assistance against trial counsel.

The Court does not disagree that a petitioner may be entitled to federal funds under the proper circumstances to investigate an unexhausted claim against trial counsel. This is not one of those cases, however. To the extent Jones argues that *Martinez* justifies an investigation into the representation of state habeas counsel Strickland, the Court observes that years of prior litigation on equitable tolling in this case were focused on allegations of ineffective assistance against Strickland for multiple reasons, including his alleged failure to investigate mitigation issues. See *Post-Holland Brief of Jones* at 27 [doc. 86]; *Reply to Respondent's Motion to Dismiss Jones's Petition as Time-Barred* at 4-6 [doc. 55]; *Motion for Relief from Judgment* at 3-11 [doc. 35]. While the Court concluded Strickland negligently miscalculated a filing deadline, it rejected Jones's contention that Strickland failed to investigate mitigation issues due to his personal relationship with trial counsel. *Opinion and Order on Remand* at 20-21 [doc. 101]. The present motion does not demonstrate a reasonable expectation that further

14

investigation into this matter will produce anything substantially different or more helpful to Jones.

Respondent also contends that the new claim Jones seeks to fund would be time-barred because it does not relate back to the original petition for which Jones was granted equitable tolling. *See* Fed. R. Civ. P. 15(c). Respondent further argues that *Martinez* has been held not to provide an exception to the statute of limitations. *See Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014) (concluding that *Martinez* relates to excusing procedural default and does not apply to the statute of limitations or the tolling of that period). This argument is well-taken.

Jones's motion is silent on this issue, and although the time for Jones to file a reply addressing this argument will not expire until after Jones's amended petition is due, the time-bar issue is not a surprise to Jones. In fact, Jones's motion for leave to file his 2009 amended petition cites the requirement in Rule 15(c) that new claims must relate back to the original petition. *Motion for Leave to File Amended Habeas Petition* at 2 [doc. 57]. Yet counsel did not make an anticipatory argument in his motion regarding the time bar (as he did with the procedural bar), and counsel chose to file the funding motion when normal court deadlines prevented the filing of a reply before the due date of the amended petition. In the week that Jones has had to file a reply to Respondent's arguments

on this matter, he instead filed another motion for "continuance" to extend the due date of his amended petition [doc. 126].

Equitable tolling is an extraordinary and limited remedy, as the parties well know.  This investigation is requested eight years after the original petition was filed and six years after the appointment of substitute counsel.  Even if further investigation could produce anything substantially different that could form the basis of a new claim, Jones has not shown how any new claims produced by the additional funding would not be time barred.

Accordingly, the motion is **DENIED** [doc. 124].

SIGNED June 20, 2014.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/ks:bb

16